IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

_____

| | | |
|---|---|---|
| DEWAYNE KELLAMES, | ) | Cause No. CV 07-14-H-DWM-RKS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF UNITED STATES MAGISTRATE |
| MIKE MAHONEY, et. al., | ) | JUDGE TO DISMISS COMPLAINT |
| | ) | |
| Defendants. | ) | |

_____

This matter comes before the Court on Plaintiff's Complaint filed February 20, 2007.

(Document 1).

## I. STATEMENT OF THE CASE

### A.      Jurisdiction

Plaintiff filed his complaint pursuant to 42 U.S.C. § 1983 seeking to recover for an

alleged denial of due process when he was reclassified at the Montana State Prison.

Accordingly, the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

### B.      Parties

Plaintiff is a state prisoner currently incarcerated at the Montana State Prison in Deer

Lodge, Montana.  (See Document 8–Notice of Change of Address filed September 11, 2007).  He

is proceeding pro se.

The named Defendants are:  Mike Mahoney, Warden of Montana State Prison; Myron

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 1

Beeson, Associate Warden, Montana State Prison; Ben Bouley, Unit Manager, Montana State Prison; Earl Lambertson, Case Manager, Montana State Prison; Roxanne Wigert, Classification Manager, Montana State Prison; Tim Mueller, Hobby Director, Montana State Prison; Mark Lochrie, Property Officer, Montana State Prison; CO Smith, CO Ken Marthaller, and "John Doe." (Document 1–Complaint, p. 3).

### C.    Procedural History

On February 20, 2007, Plaintiff DeWayne Kellames moved to proceed in forma pauperis with this action under 42 U.S.C. § 1983.  His motion was granted on March 6, 2007 (Document 6) and his Complaint was deemed filed as of February 20, 2007.  Although the matter was originally filed in the Great Falls Division of this Court, it was transferred to the Helena Division on March 6, 2007.  (Document 5).

### D.  Factual Background

On December 19, 2005, Plaintiff was removed from his housing unit and taken to lock-up for investigation into illegal activities that threatened unit security including hobby and drugs. On December 28, 2005, Plaintiff was reclassified to Administrative Segregation for alleged illegal activities that threatened the security of the prison.  Plaintiff went through the prison grievance process regarding this issue and on May 1, 2006 received a memo from then Director Bill Slaughter indicating that there had been a thorough investigation into the allegation and that the evidence presented to the Unit Management Team convinced them that Plaintiff was involved in hobby transactions that resulted in the introduction of illegal contraband into MSP. Plaintiff was reclassified to Administrative Segregation for six months after which he was transferred to Crossroads Correctional Center in Shelby, Montana.

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 2

**E.      Plaintiff's Allegations**

Plaintiff alleges that he was denied his rights under the Fifth and Fourteenth Amendments of the United States Constitution when he was reclassified to Administration Segregation for six months, lost his Inmate Welfare Fund Representative position, lost his hobby privileges and was transferred from Montana State Prison to Crossroads Correctional Center without due process of law.  He alleges that Defendants did not serve him with a disciplinary write-up and did not afford him an opportunity to be heard which resulted in unfair and unwarranted sanctions imposed against him.  (Document 1, pp. 15-16).  Plaintiff also mentions that disciplinary convictions may affect parole eligibility or have other "collateral consequences" besides the actual punishment. (Document 1, p. 18).

## II.  PRESCREENING

**A.  Standard**

As Plaintiff is proceeding in forma pauperis, his Complaint is subject to screening under 28 U.S.C. § 1915 and 28 U.S.C. § 1915A, which imposes a screening responsibility on the district court.  Section 1915A reads in pertinent part as follows:

> The court shall review  . . .  as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity [and][o]n review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(a) and (b); *see also* 28 U.S.C. § 1915(e)(2)(B) ("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that  . . .  (B) the action or appeal-(i) is frivolous or malicious; (ii) fails to

state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant

who is immune from such relief.").

Both sections 1915A(b) and 1915(e)(2)(B) provide that the Court may dismiss the

complaint before it is served upon the defendants if it finds that the complaint is "frivolous" or

that it "fails to state a claim upon which relief may be granted."  A complaint is frivolous, if it

"lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109

S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989).  A complaint fails to state a claim upon which

relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. ____, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007)

(quotation omitted).  This requirement demands "more than labels and conclusions, [or] a

formulaic recitation of the elements of a cause of action." *Id.*  A complaint must "'give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v.*

*Pardus*, 127 S.Ct. 2197, 2200 (2007)(quoting *Bell*, 127 S.Ct. at 1964 (quoting *Conley v. Gibson*,

355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957))).

Additionally, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se*

complaint, however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers.'" *Erickson*, 127 S.Ct. at 2200; *Cf.* Fed. Rule Civ. Proc. 8(f) ("All

pleadings shall be so construed as to do substantial justice").

**B.      Disciplinary Hearing Claims**

To state a claim for a due process violation, a plaintiff must show (1) that he had a

protected liberty interest, and (2) that he was deprived of that interest without adequate due

process.  If there is no liberty interest at stake, the Constitution does not require any process, and

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 4

the second element becomes irrelevant.  *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215,  223-24 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972); *Erickson v. United States*, 67 F.3d 858, 861 (9th Cir. 1995).

### 1. Liberty Interest

Plaintiff contends that he was denied his due process rights and equal treatment when, based upon erroneous information from a confidential informant, he was reclassified to Administration Segregation for six months, lost his Inmate Welfare Fund Representative position, lost his hobby privileges and was transferred from Montana State Prison to Crossroads Correctional Center.

In the prison setting, a liberty interest is recognized and protected only if state officials or employees take actions that either (1) affect the sentence imposed upon conviction in an unexpected manner, or (2) impose a hardship that is atypical and significant in relation to the ordinary incidents of prison life.  *See* *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).  Whether a hardship is "atypical and significant" depends on three factors:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861 (citing *Sandin*, 515 U.S. at 486-87); *see also* *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007) (holding that inmate was not deprived of a liberty interest where he was placed at a higher security level than indicated by calculation under controlling prison regulations).

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 5

In Plaintiff's case, the threshold requirement for showing a liberty interest is not met.[1] Plaintiff is serving a forty-year term for robbery.  (Document 1–Exhibit B, p. 1).  "Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."  *Meachum*, 427 U.S. at 225.  Consequently, placement in any part of a Montana prison would not affect the sentence in an unexpected manner.  Although Plaintiff suggests that his classification will inevitably affect the length of his sentence; *Sandin* itself precludes consideration of the effect of Plaintiff's placement on his parole prospects as "too attenuated."  *See Sandin*, 515 U.S. at 487.  Therefore, the first prong of the *Sandin* test for a liberty interest is not met.

The second prong of the *Sandin* test also is not met.  First, Plaintiff's six-month placement in administrative segregation did not impose an "atypical and significant" hardship upon him.  Placement in segregation falls within the terms of confinement ordinarily contemplated when a prison sentence is imposed, *see Toussaint v. McCarthy*, 801 F.2d 1080, 1091-92 (9th Cir. 1986), and so "comported with the prison's discretionary authority."

While a six-month segregation is longer than the term at issue in *Sandin*, it is not atypical

---

[1]  It is well-established that inmates have no protected liberty interest in their classification status or in their access to rehabilitative programs or programs they need for parole eligibility.  *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Duffy v. Riveland*, 98 F.3d 447, 457 (9th Cir. 1996); *Coakley v. Murphy*, 884 F.2d 1218, 1221 (9th Cir. 1989).  However, where reclassification is undertaken as a sanction for disciplinary violations, transfer from one custody status to another might "work a major disruption in the inmate's environment."  *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005).  For that reason, the question is not simply whether prison officials have discretion to reclassify the inmate, but whether they may reclassify as a disciplinary sanction.  A somewhat greater burden is imposed on prison officials who are disciplining inmates "for specific, serious misbehavior," *id*. at 228, than on officials who are only deciding where to put them, apart from any disciplinary sanction.  *Id*. at 228-29 (holding that, where decision involves prison officials' experience and State's interest in safety of prison staff and inmates, lesser due process protections are appropriate).

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 6

or significant in comparison to inmates in protective custody or inmates whose placement has not

yet been determined.  In *Ramirez*, the court held it could not determine from the record whether a

two-year term in segregation gave rise to a liberty interest.  The court did not reach a conclusion,

but it necessarily found that a two-year term was equivocal – and Plaintiff's term is only one-

fourth as much.

Moreover, in *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court held that

placement in a supermax prison gives rise to a liberty interest.  However, the Court noted that

prison conditions where lights are on 24 hours a day, and exercise is permitted only for one hour

per day in a small indoor room would likely apply to most solitary confinement facilities and

probably would not, under *Sandin*, give rise to a liberty interest.  *See id*. at 223-24.  The crucial

facts which led to a finding of a liberty interest in *Wilkinson* were (1) that inmates were deprived

of "almost all human contact, even to the point that conversation is not permitted from cell to

cell;" (2) that placement was for an indefinite period of time, with yearly review; and (3) that

inmates lost their parole eligibility.  *Id.*  The facts alleged by Plaintiff are not remotely

comparable.  Plaintiff's placement in segregation for a period of thirty-six days placed him in

conditions that are well within prison officials' discretion to impose.

Thus, Plaintiff cannot show that he had a liberty interest in avoiding placement in

administrative segregation for six months.  *See Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir.

2003)("[A]dministrative segregation in and of itself does not implicate a protected liberty

interest.")(*citing Sandin*, 515 U.S. at 486).

Likewise, Plaintiff does not have a protected liberty interest in his IWF position or in his

hobby privileges.  *See Toussaint*, 801 F.2d at 1094-95 (explaining that inmates have no liberty

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 7

interest in work programs).

Finally, Plaintiff does not have a liberty interest in avoiding being transferred to another prison. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *United States v. Brown*, 59 F.3d 102, 105 (9th Cir. 1995)(per curiam); *Quigg v. Slaughter*, 336 Mont. 474, 154 P.3d 1217 (Mont. 2007); *Wright v. Mahoney*, 2003 MT 141, 316 Mont. 173, 71 P.3d 1195 (Mont. 2003). Therefore, it is irrelevant whether Plaintiff received adequate due process protections, because he was not constitutionally entitled to due process.

### 2. Due Process

Even if Plaintiff had a liberty interest, he received all the process that was due to him. First, *Wilkinson* clarified that the process due upon an inmate's placement in a supermax prison is less than the process due in connection with a prison disciplinary hearing. *See Wilkinson*, 545 U.S. at 228-29 (requiring prison officials considering an inmate's security placement to meet lower standard applicable to parole officials in determining whether to grant parole) (citing *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1 (1979)). The Court endorsed the classification procedure used by the State of Ohio as sufficient to provide due process within the meaning of the Fourteenth Amendment. *See id*. at 216-17, 225.

Second, even if the Court gives Plaintiff the benefit of any doubt and assumes that he was entitled to the full panoply of due process protections provided where an inmate is deprived of a liberty interest as discipline, the prison complied with the requirements of the Fourteenth Amendment. Those requirements include "advance written notice of the claimed violation and a written statement of the factfinder[] as to the evidence relied upon and the reasons for the disciplinary action taken," *Wolff v. McDonnell*, 418 U.S. 539, 563 (1974); an opportunity "to call

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 8

witnesses and present documentary evidence in his defense when permitting him to do so will not

be unduly hazardous to institutional safety or correctional goals," _id_. at 566; and the assistance of

a fellow inmate or a staff member if he is illiterate or if the issues are especially complex, _id_. at

570.  He is also entitled to a finding of guilt that is supported by "some evidence," a standard

which is met if "there is _any_ evidence in the record that _could_ support the conclusion reached" by

the fact-finder.  _Superintendent v. Hill_, 472 U.S. 445, 455-56 (1985) (emphasis added).  Finally,

he is entitled to an impartial fact-finder.  _See, e.g._, _Edwards v. Balisok_, 520 U.S. 641, 647 (1997)

("[t]he due process requirements for a prison disciplinary hearing are in many respects less

demanding than those for criminal prosecution, but they are not so lax as to let stand the decision

of a biased hearing officer who dishonestly suppresses evidence of innocence.").

   Plaintiff's Complaint and exhibits plainly show that all of those requirements were met.

While Plaintiff alleges he did not receive a disciplinary report, he fully admits that he received a

Classification Review Notification wherein he was advised that there would be a hearing where

he could present evidence due to a "pending investigation into illegal activities that threaten the

unit security including hobby and drugs." (Document 1, p. 5, lines 14-17; Document 1-2:  Exhibit

A).  Although Plaintiff complains that he was not given the information regarding the

confidential informant, the identity of confidential informants need not be disclosed.  _Toussaint_,

801 F.2d at 1101.  The inmate has no right to cross-examine witnesses.  _Wolff_, 418 U.S. at 567-

68; _Walker v. Sumner_, 14 F.3d 1415, 1420 (9th Cir. 1994), _overruled on other grounds by_

_Sandin_, 515 U.S. at 483-84.  The credibility of the witnesses and evidence is for prison officials,

not this Court or a jury, to decide.  _Hill_, 472 U.S. at 455.  According to Plaintiff's exhibits, the

classification decision was signed by at least three individuals who were impartial, because they

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 9

were not involved in the investigation or charging process. (Document 1, Exhibit B, p. 1).

The Court also notes that Plaintiff has attached to his Complaint a memorandum to Plaintiff from Bill Slaughter dated May 1, 2006.  That memo indicates that Plaintiff was given notice of the hearing, was present at the hearing and was permitted to submit a 15-page classification appeal to Roxanne Wigert, Classification Specialist. (Document 1, Exhibit G, p. 1).

So long as the constitutional requirements are observed, even a prison's violation of its own regulations does not offend due process. *Walker*, 14 F.3d at 1419-20.  Plaintiff received constitutional due process.

## III.  CONCLUSION

Plaintiff has failed to state a claim upon which relief can be granted.  The deficiencies discussed above could not be cured by amendment. *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (citing *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)).  Therefore Plaintiff's Complaint will be recommended for dismissal.

The Prison Litigation Reform Act prohibits prisoners from bringing in forma pauperis civil actions if the prisoner has brought three or more actions in federal court that were dismissed for frivolousness, maliciousness, or for failure to state a claim. 28 U.S.C. § 1915(g).  The Court is going to designate this case as a "strike" under this provision because Plaintiff's claims fail to state a claim.  For this same reason, the Court will certify that any appeal of this matter would not be taken in good faith.  That is, the issues raised in this matter are frivolous.

Based on the foregoing, the Court enters the following:

**RECOMMENDATION**

1.  Plaintiff's Complaint (Document 1) should be **DISMISSED.**

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 10

2.   The docket shall reflect that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g).

3.   The docket shall also reflect that the Court certifies pursuant to Rule 24(3)(1) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.  Plaintiff's claims are so frivolous that no reasonable person could suppose that an appeal would have merit.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), the Plaintiff may serve and file written objections to this Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing.  A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge.

**PLAINTIFF IS CAUTIONED THAT HE MUST KEEP THE COURT ADVISED OF ANY CHANGE OF ADDRESS AND A FAILURE TO DO SO COULD RESULT IN A DISMISSAL OF THIS CASE WITHOUT FURTHER NOTICE.**

DATED this 13th day of February, 2008.


/s/ Keith Strong
Keith Strong
United States Magistrate Judge


FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 11